IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RONALD BARROW # N-52087,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 14-cv-00800-NJR |
| ) | |
| **WEXFORD HEALTH SOURCES, INC.,** ) | |
| *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Before this Court for consideration is Plaintiff Ronald Barrow's first amended complaint (Doc. 17). The Court granted Plaintiff leave to file an amended complaint on July 21, 2014, when it dismissed his original 461-page submission for violating Rule 8(a) of the Federal Rules of Civil Procedure (Doc. 12). The amended complaint, although reduced from 111 pages to 86 pages in length, fails to cure the deficiencies in the original complaint. The Court will address those problems in a separate order at a later date.

For now, the Court focuses on Plaintiff's claim that he is suffering from progressive vision loss in both eyes. That claim is buried in the 360-paragraph amended complaint. The allegations offered in support of the claim are set forth in Paragraphs 114-182 and 292-310 of the amended complaint (Doc. 17-1, pp. 16-27; Doc. 17-2, pp. 15-18). These allegations give rise to Plaintiff's request for a temporary restraining order to "remove scar tissue in [Plaintiff's] right eye and upon healing, immediately remove [a] cataract in [his] left eye" (Doc. 17-2, p. 32). Plaintiff has also filed a motion seeking leave to file a second motion for temporary restraining

order, in connection with this claim (Doc. 18).[1] Leave shall be granted. Further, so that the issue of Plaintiff's vision loss can be dealt with more effectively and expeditiously, the Court will exercise its inherent authority to manage its cases by severing this claim into a separate action, as discussed in more detail below. *See* FED. R. CIV. P. 21; *see also Thompson v. Boggs*, 33 F.3d 847, 858 (7th Cir. 1994); *Intercon Research Assoc. Ltd. v. Dresser Industries*, 696 F.2d 53, 56 (7th Cir. 1982) (discussing the broad discretion of a trial judge to determine when joinder or severance is appropriate).

**The Amended Complaint**

Although Plaintiff complains of progressive vision loss in both eyes dating back to 2006, his claim focuses on the allegedly inadequate eye care he has received since 2012 at Menard Correctional Center ("Menard") (Doc. 17-1, pp. 16-27; Doc. 17-2, pp. 15-18). According to the amended complaint, Plaintiff suffered from a detached retina in his right eye in January 2012 and a torn retina in his left eye in August 2012 (Doc. 17-1, pp. 17, 19). The treatment plan for these conditions allegedly consists of three phases (Doc. 17-1, p. 17). The first involves repair of the retina. The second involves the removal of cataracts. The third involves the removal of scar tissue. These latter two procedures are collectively referred to as "removal procedures." All three phases of treatment are allegedly necessary to restore vision, to the extent that it is possible to do so.

Plaintiff's problems became apparent when "floaters" obscured his vision on two separate occasions in 2012 (Doc. 17-1, pp. 16, 18). Each time, Plaintiff notified Defendant Johnson of his symptoms, but no action was taken to address the condition. Plaintiff lost vision in his right eye three weeks after meeting with Defendant Johnson to discuss a floater in January

---

[1] In the motion for leave (Doc. 18), Plaintiff also requests permission to file a memorandum of law in support of his amended complaint, and leave shall be granted to file this memorandum of law.

2012, and he was diagnosed with a detached retina on February 23, 2012. Plaintiff was diagnosed with a torn left retina on August 1, 2012, one week after complaining to Defendant Johnson about two floaters in his left eye (Doc. 17-1, p. 19).

It was Defendant Lochherd who diagnosed Plaintiff with a detached right retina on February 23, 2012, and referred him to an outside specialist, Dr. Ahmed,[2] for corrective surgery on February 27, 2012 (Doc. 17-1, p. 17). Dr. Ahmed developed Plaintiff's treatment plan and repeatedly emphasized the importance of completing all three phases of treatment.

Although Defendants Johnson and Lochherd issued referrals for the removal procedures in March 2012, Wexford Health Sources, Inc. ("Wexford") would not authorize them (Doc. 17-1, p. 18). According to the amended complaint, Wexford's treatment decisions were based on two policies, *i.e.*, one that elevates "cost over care" and a related one that denies treatment to any prisoner with "one good eye." Because Plaintiff still had vision in his left eye at the time he was referred for the removal procedures to his right eye, Wexford denied the referrals.

By late July 2012, Plaintiff began seeing two floaters in his left eye (Doc. 17-1, p. 19). He informed Defendant Johnson about them in writing on July 24, 2012, but Defendant Johnson failed to respond. At an appointment with Dr. Ahmed on August 1, 2012, Plaintiff was diagnosed with a torn retina and immediately treated. Dr. Ahmed again emphasized the importance of the removal procedures at this and a subsequent appointment in October 2012. Defendant Lochherd submitted another referral for the removal procedures in October 2012, but Defendants Shearing and Baker denied the referrals pursuant to Wexford's policies (Doc. 17-1, p. 20). Plaintiff nevertheless requested treatment by regularly writing to Defendants Johnson, Lochherd, Shearing, Trost, and Walls, without results.

---

[2] Dr. Ahmed is not named as a defendant in this action.

By December 26, 2013, Plaintiff's vision in both eyes had deteriorated. Defendant Lochherd diagnosed Plaintiff with a left eye cataract. She confirmed that Plaintiff was finally eligible for the removal procedures that Dr. Ahmed had recommended twenty-one months earlier. However, Plaintiff did not meet with an outside specialist until March 5, 2014. The provider failed to detect the left eye cataract and could not see the right eye scar tissue, due to the thickness of the cataract in that eye. Plaintiff was referred to a retina specialist for an appointment on April 3, 2014.

Because Menard was on lockdown, the appointment was cancelled and not rescheduled until May 16, 2014. At the appointment, the specialist again diagnosed Plaintiff with a left eye cataract, but could not see the right eye scar tissue because of the right eye cataract. Removal of the cataract was, once again, recommended. Defendant Lochherd agreed to submit another referral for right eye cataract surgery the same day (Doc. 17-1, pp. 22-23). Wexford approved this request.

In preparation for surgery, Plaintiff met with Defendant Trost on June 12, 2014. When reviewing the authorization forms, Plaintiff noticed that surgery was indicated for the left cataract and not the right. He pointed out the error. Defendant Trost confirmed that the form, in fact, listed the wrong eye and agreed to correct the error. However, no correction was made.

Plaintiff learned of this on June 26, 2014, when he was taken for surgery (Doc. 17-1, p. 24). Given the more than two year wait for right eye cataract surgery, Plaintiff insisted that his right eye cataract be removed, instead of his left. Surgery restored some vision in Plaintiff's right eye, but scar tissue remains. His left eye cataract also remains.

On July 3, 2014, Defendant Lochherd agreed to submit a referral for the third procedure to Plaintiff's right eye, for removal of scar tissue. However, due to an institutional lockdown

that began shortly thereafter and continued into August 2014, Plaintiff has been unable to undergo the procedure. Meanwhile, Plaintiff's vision remains limited in his right eye and is deteriorating in his left eye. He cannot see to read or write. He must close his right eye to do so and, even then, he can only see a distance of five feet. He suffers from daily headaches. He requires headache medicine and eye drops, which have been denied.

Plaintiff now challenges Wexford's "cost over care" and "one good eye" policies, as well as its failure to train medical staff. He sues Eric Johnson (site optometrist), Christine Lochherd (site optometrist), J. Trost (site medical director), Robert Shearing (site medical director), Gail Walls (nursing director), and Dr. Baker (utilization management physician) for depriving him of adequate eye care. He seeks a temporary restraining order to "remove scar tissue in [Plaintiff's] right eye and upon healing, immediately remove [a] cataract in [his] left eye" (Doc. 17-2, p. 32). In addition, Plaintiff seeks declaratory judgment, preliminary and permanent injunctive relief, and monetary damages (Doc. 17-2, pp. 30-34).

**Merits Review Under 28 U.S.C. § 1915A**

This matter is now before the Court for preliminary review of Paragraphs 114-182 and 292-310 of the amended complaint pursuant to 28 U.S.C. § 1915A (Doc. 17-1, pp. 16-27; Doc. 17-2, pp. 15-18). Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). After carefully considering the allegations in Paragraphs 114-182 and 292-310, the Court finds that this portion of the amended complaint, addressing the vision loss claim, survives preliminary review under § 1915A (Doc. 17-1, pp. 16-27; Doc. 17-2, pp. 15-18).

**Discussion**

### Count 1

At this early stage in litigation, the amended complaint articulates a viable Eighth Amendment medical needs claim (**Count 1**) against Defendants Johnson, Lochherd, Trost, Shearing, Walls, and Baker. The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*).

A deliberate indifference claim has two parts: an objective and a subjective component. *See Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011). To satisfy the objective component of this test, a prisoner must show that his medical needs were objectively serious. *See Farmer*, 511 U.S. at 837 (1994). A prisoner's medical need is considered serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's care." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The Seventh Circuit has recognized that vision loss associated with cataracts meets this standard. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (recognizing that cataracts can be a serious medical condition). Further, Plaintiff's condition has been repeatedly diagnosed by a physician as requiring treatment.

To satisfy the subjective component of this test, a prisoner must demonstrate that a prison official was deliberately indifferent to those needs. *See Farmer*, 511 U.S. at 837. Deliberate indifference is shown when a prison official is "subjectively aware of the prisoner's serious medical needs and disregard[s] an excessive risk that a lack of treatment pose[s] to a prisoner's health or safety." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). The complaint includes an exhaustive chronology suggesting that all of the defendants named in connection with this claim were on notice of Plaintiff's vision problems and progressive loss of vision. At this stage, the complaint states a claim of deliberate indifference to medical needs against Defendants Johnson, Lochherd, Trost, Shearing, Walls, and Baker, for allegedly delaying or denying treatment for Plaintiff's detached and torn retinas and his associated pain.

The complaint also states a claim against Defendant Wexford for allegedly instituting its "cost over care" and "one good eye" policies. In order to support a claim against Defendant Wexford, Plaintiff must allege that this defendant had "an official policy or custom"

that "not only caused the constitutional violation, but was the 'moving force' behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). "A plaintiff may demonstrate an official policy through: (1) an express policy that causes a constitutional violation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* at 515. The amended complaint satisfies the threshold requirements for an Eighth Amendment claim against Wexford on this basis. Accordingly, Plaintiff shall be allowed to proceed with **Count 1** against Defendants Johnson, Lochherd, Trost, Shearing, Walls, Baker, and Wexford. Because Plaintiff seeks injunctive relief, the Clerk shall be directed to add Menard's Warden, in his or her official capacity, based solely on this request for relief.

## Count 2

Plaintiff also asserts a medical negligence claim (**Count 2**) against Defendants Wexford, Johnson, Lochherd, Trost, Shearing, Walls, and Baker. A defendant can never be held liable under § 1983 for negligence. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995). However, Plaintiff's negligence claim arises under Illinois law.

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299

(7th Cir. 1995)). While this Court has supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367, this is not the end of the matter.

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a) (West 2013).[3] A separate affidavit and report shall be filed as to each defendant, which, in this case, includes Defendants Wexford, Johnson, Lochherd, Trost, Shearing, Walls, and Baker. *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required certificate with regard to these defendants is grounds for dismissal of Plaintiff's medical negligence claim against them. *See* 735 ILL. COMP. STAT. § 5/2-

---

[3] The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010. *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety). After *Lebron*, the previous version of the statute continued in effect. *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010). The Illinois legislature re-enacted and amended 735 ILL. COMP. STAT. §5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section. *See* notes on Validity of 735 ILL. COMP. STAT. §5/2-622 (West 2013).

622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, 2007 WL 1655799 *4-5 (S.D. Ill. 2007).

In the instant case, Plaintiff has failed to file the necessary affidavit and certificate of merit with regard to Defendants Wexford, Johnson, Lochherd, Trost, Shearing, Walls, and Baker. Therefore, the medical negligence claim in Count 2 is subject to dismissal. Plaintiff shall be allowed 60 days from the date of this Order to file the required affidavit/certificates. Should Plaintiff fail to do so in a timely manner, **Count 2** shall be dismissed without prejudice. FED. R. CIV. P. 41(b).

## Severance

Because Plaintiff has buried Counts 1 and 2 amidst an 86-page amended complaint that is rife with problems, the Court cannot effectively address all of his claims together in one lawsuit. Further, the Court notes that Plaintiff's vision loss claim presents what appears to be a more pressing issue that requires prompt consideration. Under these circumstances, the Court shall exercise its inherent authority to manage its cases by administratively severing Counts 1 and 2 into a separate action. *See* FED. R. CIV. P. 21; *see also Thompson v. Boggs*, 33 F.3d 847, 858 (7th Cir. 1994); *Intercon Research Assoc. Ltd. v. Dresser Industries*, 696 F.2d 53, 56 (7th Cir. 1982).

Defendants Wexford, Johnson, Lochherd, Trost, Shearing, Walls, and Baker shall be named as parties in the severed action. Because Plaintiff seeks injunctive relief, the Court also

deems it appropriate to name Menard's Warden as a defendant in his or her official capacity only.

The factual allegations that support Counts 1 and 2 are set forth in Paragraphs 114-182 and 292-310 of the "Statement of Claim" in the amended complaint. When answering the amended complaint, Defendants should respond to these allegations, in addition to those set forth in the sections entitled "Jurisdiction and Venue," "Parties," and "Request for Relief." It is not necessary to respond to any other allegations in the 360-paragraph "Statement of Claim."

Finally, because the Court is severing this action for administrative reasons, no additional filing fee will be assessed in the severed case at this time. The severed action is subject to consolidation with this case at any point the Court deems it appropriate to do so.

**Second Motion for Temporary Restraining Order**

Plaintiff seeks a temporary restraining order ("TRO"), requiring Wexford to authorize and provide Plaintiff with immediate eye surgery to remove scar tissue from his right eye and a cataract from his left eye (Doc. 17-2, p. 32). He has filed a separate motion for TRO in support of this request.[4] The Court construes the request as one for a TRO and/or preliminary injunction.

In order to obtain relief, whether through a temporary restraining order or a preliminary injunction, Plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists, and; (3) Plaintiff will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the district court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

---

[4] Plaintiff's second motion for TRO addresses other medical issues. The request, as it pertains to any issue other than vision, will be addressed in this action in a separate order of this Court.

Plaintiff's request as to Count 1 warrants further consideration on an expedited basis. Accordingly, the request for a TRO and/or preliminary injunction shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson, who shall resolve the request as it relates to Count 1 as soon as practicable and issue a Report and Recommendation. Any motions filed after the date of this Order that relate to this request are also hereby **REFERRED** to Magistrate Judge Wilkerson.

**Pending Motions**

Plaintiff has filed a motion for recruitment of counsel (Doc. 2), which is hereby **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for a decision in the severed case.

Plaintiff has also filed a motion for leave to file motion for temporary restraining order and memorandum of law in support of first amended complaint (Doc. 18), which is hereby **GRANTED**. The Clerk shall be directed to file both motions in this action and the severed case and entitle the request for a temporary restraining order as Plaintiff's "Second Motion for Temporary Restraining Order."

**Disposition**

**IT IS HEREBY ORDERED** that Plaintiff's **COUNT 1** and **COUNT 2** are **SEVERED** into a new case. The new case presents the following claims:

> **Count 1: Defendants Wexford, Johnson, Lochherd, Trost, Shearing, Walls, and Baker failed to provide Plaintiff with adequate eye care, in violation of the Eighth Amendment; and**
>
> **Count 2: Defendants Wexford, Johnson, Lochherd, Trost, Shearing, Walls, and Baker were negligent in their treatment of Plaintiff's vision problems under Illinois law.**

The **CLERK** is hereby **DIRECTED** to add Menard's Warden, in his or her official capacity, as a party to the severed action for purposes of Plaintiff's request for injunctive relief, including a temporary restraining order, a preliminary injunction, and/or a permanent injunction.

The new case shall be entitled "**Ronald Barrow, Plaintiff, v. Wexford Health Sources, Inc., Dr. Eric Johnson, Dr. Christine Lochherd, Dr. J. Trost, Dr. Robert Shearing, Gail Walls, Dr. Baker, and Menard's Warden, Defendants**."

The **CLERK** is also **DIRECTED** to file Plaintiff's motion for temporary restraining order in this action and the severed case, entitling it "Second Motion for Temporary Restraining Order." Likewise, the **CLERK** is **DIRECTED** to file the memorandum of law in support of first amended complaint in both actions.

The new case **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings. In the new case, the **CLERK** is **DIRECTED** to file the following documents:

 (1) This Memorandum and Order;

 (2) Amended Complaint (Doc. 17);

 (3) Motion for Recruitment of Counsel (Doc. 2);

 (4) Second Motion for Temporary Restraining Order; and

 (5) Memorandum of Law in Support of Amended Complaint.

**IT IS FURTHER ORDERED** that <u>**all other claims shall remain in this action and shall be the subject of a separate order which addresses those claims**</u>.

**IT IS FURTHER ORDERED** that as to the medical malpractice claim in **COUNT 2** against Defendants Wexford, Johnson, Lochherd, Trost, Shearing, Walls, and Baker, Plaintiff shall file the required affidavit and certificate pursuant to 735 ILLINOIS COMPILED STATUTES § 5/2-622, no later than 60 days from the date of this Order (on or before **October 28, 2014**).

Should Plaintiff fail to timely file the required affidavit or the healthcare professional's certificate of merit, **COUNT 2** shall be dismissed without prejudice.

As to **COUNTS 1** and **2**, the Clerk is directed to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **WEXFORD, JOHNSON, LOCHHERD, TROST, SHEARING, WALLS, BAKER,** and **MENARD'S WARDEN**. The Clerk shall issue the completed summons and prepare a service packet for each defendant consisting of: the completed summons, the completed form USM-285, a copy of the amended complaint (Doc. 17), this Memorandum and Order, and the Second Motion for Temporary Restraining Order. The Clerk shall deliver the service packets for each defendant to the United States Marshal Service for personal service on each defendant.

Pursuant to Federal Rule of Civil Procedure 4, **within 14 days of the date of this Order (on or before September 11, 2014),** the United States Marshals Service **SHALL personally serve** upon Defendants **WEXFORD, JOHNSON, LOCHHERD, TROST, SHEARING, WALLS, BAKER,** and **MENARD'S WARDEN**: the service packets containing the summons, form USM-285, a copy of the amended complaint (Doc. 17), this Memorandum and Order, and the Second Motion for Temporary Restraining Order. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service. The Court will not require Defendants to pay the full costs of formal service, as the Court is ordering personal service to expedite the resolution of Plaintiff's motion for temporary restraining order and/or request for preliminary injunctive relief.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a

true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings, including a decision on Plaintiff's motion for recruitment of counsel (Doc. 2) and Plaintiff's request for a temporary restraining order and/or preliminary injunction, which shall be resolved as soon as practicable. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: August 28, 2014**

*Digitally signed by Nancy J Rosenstengel*
*Date: 2014.08.28 08:13:12 -05'00'*

**NANCY J. ROSENSTENGEL**
**United States District Judge**